UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
SETSEA S.P.A.,

                    Plaintiff,


          -against-                        07 Civ. 4147 (DAB)
                                                ORDER



SOURCE LINK SHIPPING CO. LTD.,

                    Defendant.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

     Plaintiff Setsea S.p.A. brings this action against Defendant

Source Link Shipping Co. Ltd. for damages and costs it sustained

as a result of Defendant's alleged breach of two Forward Freight

"Swap" Agreements.  Plaintiff seeks an Order from the Court

"directing the Clerk of Court to issue Process of Maritime

Attachment and Garnishment pursuant to Rule B of the Supplemental

Rules for Certain Admiralty and Maritime Claims" against

Defendant to secure Plaintiff's claims and so that the Court may

obtain personal jurisdiction over Defendant.  (Complaint ¶ 11.)

Plaintiff alleges that the Court has subject matter jurisdiction

over this matter because its claim regarding the alleged breach

of the Forward Freight "Swap" Agreements constitutes "an

admiralty and maritime claim within the meaning of Rule 9(h) of

the Federal Rules of Civil Procedure and 28 United States Code §

1333."  (Id. ¶ 1.)  Plaintiff submitted a cover-letter dated May

29, 2007 in support of its application for an Ex Parte Order For Process of Maritime Attachment against Defendant in which it argued that "[w]hile there are no decisions in this or any other Circuit that speak directly on whether a Forward Freight 'Swap' Agreement or any other Freight Futures Contract is maritime, these agreements have all the hallmarks of a maritime contract."[1]

Having considered Plaintiff's Complaint, the two Forward Freight "Swap" Agreements that are the subject of the Complaint and Plaintiff's application for an Ex Parte Order For Process of Maritime Attachment, for the reasons set forth below, the Court DENIES Plaintiff's application.  The Court finds that the Forward Freight "Swap" Agreements that Defendant allegedly breached are not maritime contracts and that therefore the Complaint alleging their breach does not fall within the Court's original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction," as provided by 28 U.S.C. § 1333(1).  Accordingly, the Complaint is DISMISSED WITHOUT PREJUDICE.  See Fed. R. Civ. P. 12(h)(3) ("[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action"); Steel Co. v.

---

[1]     At the Court's request, Plaintiff submitted copies of the two Forward Freight "Swap" Agreements to Chambers.

<u>Citizens for Better Environment</u>, 523 U.S. 83, 94 (1998)
("'[w]ithout jurisdiction the court cannot proceed at all in any
cause'") (quoting <u>Ex parte McCardle</u>, 74 U.S. 506, 514 (1868)).[2]

BACKGROUND

Plaintiff alleges that Defendant agreed to "buy and sell
Freight Futures" with it pursuant to the two Forward Freight
"Swap" Agreements, dated December 13, 2006 and January 22, 2007
(the "Agreements"). (Complaint ¶ 4.) Plaintiff alleges that "a
dispute arose between the parties regarding Defendant's failure
to pay the losses sustained by it in breach of the Agreements"
and that it was thereby damaged "in the total principal amount of
$1,602,691.50." (<u>Id.</u> ¶¶ 5-6.)

The Complaint otherwise contains scant allegations regarding
the terms of the Agreements and of their subject matter. In
particular, the Complaint is vague as to the Agreements'
connection to maritime commerce. Plaintiff explains in its
cover-letter dated May 29, 2007, however, that the Agreements
"are commitments to perform in the future a shipping service

---

[2]    While it would appear, based on the Complaint's allegations,
that the Court might have subject matter jurisdiction over this
matter pursuant to 28 U.S.C. § 1332, the lack of any allegations
regarding the Court's personal jurisdiction over Defendant
counsels in favor of dismissal without prejudice.

between ship owners, charterers and/or traders."  Such
agreements, according to Plaintiff's letter, are "negotiated with
the express purpose of hedging and managing market risks relating
to the employment of vessels in today's volatile freight market"
and that the specific Agreements that Defendants allegedly
breached were to "buy and sell a specified tonnage freight at an
agreed price for an agreed route and time span so that both
[Parties] could reliably predict their ocean freight revenues and
costs for the duration of the contract for those ocean routes."

Having examined both Agreements, the Court notes that they
are tied to maritime commerce in that they are dependant on
averaged freight rates on international commercial freight
routes, as assessed and published by the London-based Baltic
Exchange in a variety of indices.  The Agreements, for instance,
contain provisions specifying "contract routes" which are defined
as the to averaged routes of specified indices published by the
Baltic Exchange.  The Agreements do not, however, provide for the
physical shipping or delivery of any specific freight tonnage or
of any specific cargoes.  Nor do they relate to the
transportation of goods of any kind or to any specific vessels.

The Agreements specify a "contract rate" of several thousand
dollars per day, along with a "contract quantity" term of ninety-
one days on both Agreements, between April 2007 and June 2007.  A

"settlement rate" which is also tied to Baltic Exchange indices
is provided in each Agreement.  The main obligation of the
Parties to the Agreements is described in identical provisions
entitled "Settlement Sum":

> The "Settlement Sum" is the difference between the
> Contract Rate and the Settlement Rate multiplied by the
> Contract Quantity.  If the Settlement Rate is greater
> than the Contract Rate, the Seller shall pay the Buyer
> the Settlement Sum.  If the Settlement Rate is less
> than the Contract Rate, the Buyer shall pay the Seller
> the Settlement Sum.

In both Agreements, Plaintiff was the buyer and Defendant was the
seller.  It is clear that the Parties agreed to settle their
obligations under the Agreements in cash.

DISCUSSION

Rule 12(h)(3) of the Federal Rules of Civil Procedure
provides that "[w]henever it appears by suggestion of the parties
or otherwise that the court lacks jurisdiction of the subject
matter, the court shall dismiss the action."  Fed. R. Civ. P.
12(h)(3).  When resolving issues surrounding subject matter
jurisdiction, a district court is not confined to the complaint
and may refer to evidence outside the pleadings.  Makarova v.
United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Kamen v.
American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)).
Furthermore, "jurisdiction must be shown affirmatively, and that

5

showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Financial Services Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).

Title 28 U.S.C. § 1333(1) confers subject matter jurisdiction over actions between "[a]ny civil case of admiralty or maritime jurisdiction. . . ." 28 U.S.C. § 1333(1). Determining whether a contract is maritime and therefore gives rise to admiralty jurisdiction is difficult however. The Supreme Court has observed that federal case law has not drawn "clean lines between maritime and non-maritime contracts." Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd., 543 U.S. 14, 23 (2004); Kossick v. United Fruit Co., 365 U.S. 731, 735 (1961) ("[t]he boundaries of admiralty jurisdiction over contracts - as opposed to torts or crimes - being conceptual rather than spatial, have always been difficult to draw"); see also Ingersoll Milling Mach. Co. v. M/V Bodena, 829 F.2d 293, 301 (2d Cir. 1987) ("[t]he precise categorization of the contracts that warrant invocation of the federal courts' admiralty jurisdiction has proven particularly elusive" (quoting CTI-Container Leasing Corp. v. Oceanic Operations Corp., 682 F.2d 377, 379 (2d Cir. 1982)).

A court must look to "the subject matter of the . . . contract" and "the services performed under the contract" to determine whether it a maritime contract. Exxon Corp. v. Central

6

Gulf Lines, Inc., 500 U.S. 603, 612 (1991).  "[T]he true
criterion is whether [the contract] has 'reference to maritime
service or maritime transactions.'"  Norfolk S. Ry. Co., 543 U.S.
at 24 (quoting North Pacific S.S. Co. v. Hall Brothers Marine
Railway & Shipbuilding Co., 249 U.S. 119, 125 (1919)).  In
addition, the Second Circuit has held that, as a threshold
matter, "[b]efore attempting to categorize contractual rights as
maritime or non-maritime, a federal court must first consider
whether an issue related to maritime interests has been raised."
Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd., 968 F.2d
196, 199 (2d Cir. 1992).[3]  To grant an Ex Parte Order For Process
of Maritime Attachment, a court must first determine that "the
plaintiff's claim [is] one which will support a finding of
admiralty jurisdiction under 28 U.S.C. § 1333."  Winter Storm
Shipping, Ltd. v. TPI, 310 F.3d 236, 268 (2d Cir. 2002) (citation
omitted).

　　　Turning to the Agreements presently before the Court, it is
clear that their subject matter is not "so attenuated from the
business of maritime commerce that it does not implicate the

---

[3]    The Second Circuit has, however, recently noted "some
uncertainty as to the extent to which this Court's 'threshold
inquiry' test survives the Supreme Court's most recent admiralty
decision, Norfolk Southern Railway Co. v. James N. Kirby Pty
Ltd.." Folksamerica Reinsurance Co. v. Clean Water of New York,
Inc., 413 F.3d 307, 313 (2d Cir. 2005).

concerns underlying admiralty and maritime jurisdiction."
Atlantic Mut. Ins. Co., 968 F.2d at 200.  But while the
Agreements may pass the Second Circuit's "threshold inquiry" the
Court finds that they do not constitute maritime contracts
because, in their specific provisions, they lack "'reference to
maritime service or maritime transactions.'"  Norfolk S. Ry. Co.,
543 U.S. at 24 (citation omitted).  The Court finds that the
Agreements, when signed, related to reciprocal future promises of
payment in cash and that they do not address maritime services or
transactions such as the transportation of specific cargoes or
the involvement of specific vessels.  The Agreements merely seek
to establish a means of minimizing financial risk and
establishing a formula to make future costs and revenues more
predictable.  Plaintiff has therefore failed to establish that
this Court has admiralty jurisdiction over the alleged breach of
the Agreements.  The Court accordingly DENIES Plaintiff's
application for an Ex Parte Order For Process of Maritime
Attachment and DISMISSES this action for lack of subject matter
jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3).

## LEAVE TO REPLEAD

Should Plaintiff seek to set out a sufficient basis for the
Court's exercise of jurisdiction in this action, it shall file an

Amended Complaint within thirty (30) days of the date of this Order.  Plaintiff's failure to do so shall be deemed a waiver of its right to amend the Complaint.

CONCLUSION

Plaintiff's application for an Ex Parte Order For Process of Maritime Attachment is DENIED because the contracts at issue in this matter are not maritime contracts and therefore do not fall within the Court's admiralty jurisdiction under 28 U.S.C. § 1333(1).  As the Court lacks subject matter jurisdiction over this matter, pursuant to  Fed. R. Civ. P. 12(h)(3), the Complaint is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

Dated:     New York, New York
           June 5, 2007

                                        _Deborah A. Batts_
                                        Deborah A. Batts
                                        United States District Judge